UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS SHELTON, Reg. No. M24928 | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:19-cv-08119 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| VICTOR CALLOWAY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Demetrius Shelton ("Petitioner") brings his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Petitioner asks the Court to vacate his first-degree murder conviction stemming from a December 31, 2007, altercation which resulted in the death of Douglas Haynes and for which Petitioner was sentenced to 32 years of incarceration in 2010. While Petitioner's habeas claim timely relates back to his initial petition for statute of limitations purposes, the Court dismisses his petition on the merits, with prejudice.

**Background**

Unless otherwise noted, the following facts are drawn from the state appellate court opinion on review following Petitioner's July, 2011, postconviction petition. *See People v. Shelton*, 2013 IL App (1st) 120587-U. *See Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012) ("The state court's factual determinations are entitled to a presumption of correctness, and the petitioner has the burden of overcoming this presumption by clear and convincing evidence.").

1

A. <u>Jury Trial</u>

On December 31, 2007, Petitioner, Terrance Hopkins, and Reginald Jones, were involved in an altercation with Douglas Haynes, which resulted in Haynes's death approximately 18 days later.

Douglas Haynes was 18 years old, he stood six feet three inches tall, and he weighed 335 pounds. He suffered from various ailments including an enlarged heart that was "dilated and flabby." He also was diagnosed with congestive heart failure and a sickle cell trait. On the evening of December 31, 2007, Haynes decided to go out and celebrate New Year's Eve. He picked up a friend, LaJArvis Franklin, and his cousin, Genard Rhodes, prior to stopping at various locations. At about 11:00 p.m., Haynes and Franklin dropped Rhodes off at home and went to obtain food. Haynes and Franklin then drove to the 4800 block of West Ferdinand Street, where three other people joined them in the van: Petitioner, Rhodes, and Jones.

Once in the van, Petitioner and Haynes immediately "started arguing." The argument became physical when Petitioner and Jones began hitting and punching Haynes in the head. Franklin then tried to intervene, but someone grabbed him from behind and told him not to get involved. After swerving, the van came to a stop, and Haynes fled from the van. Petitioner and Jones left the van and chased Haynes. Rhodes exited the van and watched Haynes and Petitioner "tussle[…] a little bit and … f[all] to the ground." Rhodes observed a crowd kicking Haynes. Rhodes tried to intervene after hearing Haynes say that he could not breathe, but Rhodes was told to stay away. He walked away soon thereafter. Rhodes did not call the police because he did not believe that anyone would be hurt.

Franklin was the last person who left the van. He walked halfway down the block and saw four men standing around Haynes kicking him and testified he saw Petitioner and Jones punching Haynes. Franklin left the scene and went to his girlfriend's house. Franklin went back to the scene a short time later and found Haynes standing alone in the street and bleeding from his face. Haynes attempted to walk with Franklin, but was unable to due to the severity of his injuries. Franklin took

2

Haynes' van keys, left Haynes on the corner of Hubbard Street, and went to Haynes' house for help. He returned to the scene with Haynes' mother, Charlene, and his sister, Dominique.

When they returned, Haynes told his mother that he could not breathe, so she told Dominique to call an ambulance. A fire truck and an ambulance arrived and paramedics attempted to stabilize Haynes, who by that time was unconscious, unresponsive, and gasping for air. The paramedics determined that Haynes needed more specialized care than could be provided in an emergency room, so they transported him to the nearest trauma center where he slipped into a coma. Haynes died several weeks later, on January 18, 2008.

A forensic pathologist from the Cook County Medical Examiner's Office, Dr. J. Lawrence Cogan, testified that Haynes' cause of death was "pneumonia due to amphetamine intoxication with other significant conditions being multiple injuries due to an assault." He determined the manner of death to be a homicide. Although Cogan described Haynes' death as "somewhat complex," he stated that the beating he underwent on December 31, 2007, caused the conditions that led to his death. Cogan also stated that the hospital's medical records indicated that Haynes developed rhabdomyolysis—a condition where remnants of destroyed muscles block the kidneys and liver and cause them to fail— due to multiple injuries from assault with the other condition being amphetamines that led to liver failure, sepsis, pneumonia and his resulting death. Cogan ultimately opined, that but for the beating, there would have been no conditions that would have caused Haynes' death.

Defense counsel urged the jury to convict Petitioner of aggravated battery (rather than murder), arguing the State failed to prove that the beating had caused Haynes' death. After the defense rested, the trial court instructed the jury on first degree murder, accountability, causation, and aggravated battery. Following deliberations, the jury found Petitioner guilty of first-degree murder.

3

B. Post Trial Proceedings

Post-trial, Petitioner terminated his attorney. His new counsel filed an amended motion for a new trial and or judgment notwithstanding the verdict. Among other things, counsel for Petitioner argued that the jury should have been given an involuntary manslaughter instruction because Petitioner did not have the mental state required for first degree murder, instead, arguing he was merely reckless in performing acts that ultimately led to Haynes' death. The trial court rejected Petitioner's claim that an involuntary manslaughter instruction was appropriate in this case. The court found there was no basis for the instruction because the evidence showed that Petitioner acted intentionally and stated: "I don't believe that there's any way that a reasonable jury could find these defendants acted in a reckless manner in this case." The trial court also noted that "This was a very vicious and brutal beating" that did not result in "superficial injuries."

The trial court further held that "a reasonable trier of fact could assume that the defendants acted intentionally, knowingly, or at a minimum knew that what they were doing was likely to cause death or great bodily harm notwithstanding the fact that the cause of [Haynes'] death got tied up with who he is."

C. Appellate Review

On December 30, 2013, Petitioner appealed his conviction, renewing his argument that trial counsel was ineffective for failing to tender an involuntary manslaughter instruction. The court rejected this claim under *Strickland v. Washington*, 466 U.S. 668 (1984), holding that an involuntary manslaughter instruction was not warranted under Illinois law because Petitioner's mental state "was consistent with that of first-degree murder and inconsistent with that of involuntary manslaughter," meaning counsel's performance in not seeking this unwarranted instruction, was not deficient.

While the appellate court recognized four issues on appeal, Petitioner currently alleges the court's description of the amended post-trial motion does not reflect that Petitioner also argued that

4

trial counsel was ineffective in failing to advise Petitioner that the involuntary manslaughter instruction could be submitted. That argument appears in the first paragraph of the motion's memorandum and states: "at trial, [Petitioner]'s counsel, with his consent, submitted the offense of aggravated battery as a lesser included offense of first-degree murder. Counsel failed, however, to also submit the lesser included offense of involuntary manslaughter. Counsel did not advise [Petitioner] that this offense could be submitted to the jury as a lesser included offense, and [Petitioner] did not agree or tell defense counsel that this instruction should not be submitted. Counsel's omission deprived [Petitioner] of the effective assistance of counsel." Petitioner further stated, in a July 13, 2011, post-trial affidavit that his trial counsel never told him about his right to have the jury instructed on involuntary manslaughter.

Petitioner's ensuing petition for leave to appeal again alleged that trial counsel was ineffective for not requesting the involuntary manslaughter instruction. On May 28, 2014, the Illinois Supreme Court denied leave to appeal. On February 28, 2015, Petitioner filed a counseled postconviction petition which the circuit court dismissed and the Illinois Appellate Court affirmed on January 19, 2018. On January 31, 2018, the Illinois Supreme Court issued a supervisory order denying leave to appeal but vacating the appellate court's January 19, 2018 order, remanding the matter back to the appellate court. On May 10, 2019, the appellate court again affirmed.

D. Habeas Petition

Petitioner filed his initial habeas petition on December 11, 2019, alleging (1) ineffective assistance of counsel for failure to request an involuntary manslaughter jury instruction and (2) denial of a fair sentencing hearing. On April 11, 2024, Petitioner filed the present amended habeas petition before the Court raising a single claim: counsel was ineffective for failing to Advise [Petitioner] of his option to request a jury instruction on involuntary manslaughter. The Court now turns to this petition.

**Legal Standard**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, sets a 1-year statute of limitations for seeking federal habeas corpus relief from a state-court judgment. *Lawrence v. Florida*, 549 U.S. 327, 331 (2007); 28 U.S.C. § 2244(d)(1). This limitations period is tolled while a state prisoner completes all state proceedings, including state direct appeal and state postconviction review. *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000). For purposes of timeliness, amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings arise out of the same conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading. Fed. R. Civ. P. 15(c)(1); *Mayle v. Felix*, 545 U.S. 644, 646 (2005).

Even if a federal court determines a prisoner timely filed his habeas petition, it cannot grant a petition for a writ of habeas corpus for "any claim that was adjudicated on the merits in state court proceedings." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). Thus, where the state court addressed Petitioner's claim on the merits, a federal court can only re-adjudicate a state court ruling when the state court's rejection of the claim was (1) contrary to, or an unreasonable application of, United States Supreme Court precedent under § 2254(d)(1); or (2) based on an unreasonable determination of facts under § 2254(d)(2). *Cullen v. Pinholster*, 563 U.S. 170, 185 & n.7 (2011).

**Analysis**

    A. <u>Timeliness of Petitioner's Claim</u>

        1. *Timeliness of Initial Petition*

For a state prisoner raising claims in federal court attacking a state conviction, the one-year limitations period typically begins to run on the date on which the judgment became final by the

6

conclusion of direct appellate and postconviction review or on the expiration date of time for seeking such review. *See Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000); *see* 28 U.S.C. § 2244(d)(1)(A).

Petitioner's conviction became final on August 26, 2014, when the time expired to file a petition for writ of certiorari in the United States Supreme Court. *See Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2000). The limitations period then ran for 185 days until Petitioner filed a postconviction petition in state court on February 28, 2015, which tolled the limitations period, *see* 28 U.S.C. § 2244(d)(2) (limitations period tolled while "properly filed application for State post-conviction [relief] . . . is pending"). The period remained tolled until June 14, 2019, when the time to file a postconviction petition for leave to appeal expired. *Id.* The clock began to run again the following day and expired 180 days later on December 11, 2019. Because Petitioner filed his initial petition on that December 11, 2019, expiration date, his initial petition is timely for purposes of § 2254.

2. *Timeliness of Amended Petition*

Because Petitioner did not file his amended petition until April 11, 2024, it is only timely if the ineffective assistance of counsel claim asserted in his amended petition relates back to the ineffective assistance claim raised in his December 11, 2019, petition. *See* Fed. R. Civ. P. 15(c)(1). Amended pleadings relate back to the original pleadings for limitations purposes when both are connected by a "common core of operative facts." *Mayle*, 545 U.S. at 647.

Petitioner's current claim relates back to his initial petition for purposes of habeas review because it arises out of the same conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading. *See* Fed. R. Civ. P. 15(c)(1). While Petitioner did not assert the exact claim outlined in his amended petition that he asserted in his initial petition, the claim relates directly in conduct, transaction, and occurrence to his original claim. It is irrelevant if Petitioner's original claim only addressed counsel's failure to request a jury instruction while the amended claim addresses

7

counsel's failure to advise Petitioner about requesting the jury instruction—both claims involved ineffective assistance claims of the same lawyer regarding the same subject. *See Gonzalez v. Dennison*, No. 20-cv-4024, 2023 WL 3258525 (N.D.Ill. May 4, 2023) (Valderrama, J.) (determining petitioner's claims were tied to a common core of operative fact even though the original claim involved entering the plea while the amended claim involved advice about entering the plea).[1] That the claims related directly in conduct, transaction, and occurrence is further proved by Petitioner's initial statement of facts which explicitly outlined that he "provided affidavits saying trial counsel never informed [him] about the lesser offense on the mental state element, involuntary manslaughter…[and that he] would have wanted the jury to be instructed on that lesser offense as well, had counsel mentioned it to [him]." (Dkt 1 at *8).

Accordingly, because Petitioner's amended claim is tied to a common core of operative fact from his initial claim, it is also timely for purposes of § 2244.

B. Merits of Petitioner's Claim

The Court now addresses whether Petitioner's claim was adjudicated on the merits, and if so, whether the Court is barred from relitigating the claim.

1. *Adjudication on the Merits*

Petitioner argues this Court should rule that the appellate court overlooked his argument that his trial counsel was ineffective for not advising him of his option to request a jury instruction on involuntary manslaughter. Specifically, Petitioner seeks a ruling that his claim was not adjudicated by the state court and thus subject to *de novo*, rather than deferential, review.

---

[1] *Contrast Mayle*, 545 U.S. at 649 (determining an amended petition addressing a Fifth Amendment violation did not relate back to a claim in the initial petition addressing a Confrontation Clause concern because events in the original and amended claims occurred at different times and places, involved different people, and implicated different rules of law).

8

If a petitioner's claim was adjudicated on the merits in state court, the court applies a deferential standard codified by AEDPA. 28 U.S.C. 2254(d). If a claim was not adjudicated on the merits in state court, the federal court reviews the decision of the last state court that substantively adjudicated the claim *de novo*. *See Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009).

This Court concludes that Petitioner's claims was adjudicated on the merits by the state appellate court. The appellate court held that Petitioner failed to show that his trial counsel's representation was deficient under *Strickland*, and accordingly determined that all of his "related contentions" were "moot." *Shelton*, 2013 IL App (1st) 120587-U at ¶ 62. When the appellate court determined that counsel was not ineffective for failing to request an involuntary manslaughter instruction since it was not warranted under Illinois law, the court implicitly rendered moot Petitioner's "related contention" that counsel was ineffective for failing to advise Petitioner of an instruction that was not available under the law.

Petitioner also has not sufficiently rebutted the *Richter* presumption, which presumes "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. While Petitioner concedes the appellate court recognized that he presented the argument that his trial counsel was ineffective in failing to advise him about his option to request the jury instruction and that the appellate court addressed ineffective assistance generally, he argues that the court did not explicitly address whether his lawyer's failure to advise him of his right to request the instruction "fell below an objective standard of reasonableness." (*See* Dkt. 106 at *11). The Petitioner's assertion fails, however, because when the appellate court ruled that all claims related to his counsel's failure to provide an involuntary manslaughter instruction were moot, it created a presumption that his present claim was adjudicated on the merits.

9

Finally, Petitioner argues that even if this Court rejects his argument that his entire ineffective assistance claim must be reviewed *de novo*, this Court should still review the prejudice-prong of his claim *de novo*. This argument also fails because the appellate court made a prejudice determination when it determined that "the failure to establish either deficient performance or prejudice dooms [his] ineffectiveness claim." (*id.* at *12). Because the Petitioner could not prove deficient performance, he could not be prejudiced by the very same deficient performance he failed to prove.

Since the state court addressed Petitioner's claim on the merits, its judgment is entitled to AEDPA deference.

### 2. *AEDPA Deference*

Because Petitioner's claim is subject to AEDPA deference, this Court can only relitigate his claim if the state court's judgment was contrary to, or an unreasonable application of, United States Supreme Court precedent or an unreasonable determination of fact. *See* §§ 2254(d)(1-2). 2254(d) is a "difficult" standard to meet, because it was "meant to be" difficult. *Richter,* 562 U.S. at 102. The prisoner must show more than simply an error or even clear error by the state court. *Shinn v. Kayer*, 141 S.Ct. 517, 118 (2020). Instead, habeas is to "guard against extreme malfunctions in the state criminal justice system" and should only be granted when "there is no possibility fair minded jurists could disagree that the state court's decisions conflict with the Supreme Court's precedents." *Greene v. Fisher,* 565 U.S. 34, 38 (2011).

A claim of ineffective assistance of counsel is evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove: (1) his counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id.* at 687–88. As to prejudice, a defendant must show a reasonable probability that, but for counsel's errors, the result would have been different. *Id.* 694.

Here, the state appellate court correctly identified *Strickland* as the governing standard for assessing Petitioner's ineffective assistance claim and reasonably concluded that Petitioner could not demonstrate that his trial attorney was constitutionally ineffective for not requesting an instruction for manslaughter and relatedly failing to advise him on availability of such an instruction. Specifically, the court determined such an instruction was inappropriate for Petitioner's case where the evidence showed he deliberately and intentionally attacked Haynes with "a gang of men," continued beating the victim for 2-5 minutes, and "repeatedly and severely" beat the victim by punching, cutting, and kicking him in the head., creating a "strong probability of death or great bodily harm" and making an involuntary manslaughter instruction, unavailable. *Shelton*, 2013 IL App (1st) 120587-U at ¶ 55. Most importantly, because federal courts are not permitted to review a state court's resolution of state-law questions, *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013), this Court must be doubly deferential to the state court's determination on whether an involuntary manslaughter instruction was available under Illinois Law. In the present instance, where the state court determined the involuntary manslaughter instruction was not available as a matter of Illinois law due to Petitioner's mental state and that Petitioner failed to show that his trial counsel's representation was deficient under *Strickland*, the Petitioner's claim cannot be relitigated or second-guessed on federal habeas review.

Accordingly, Petitioner's claim fails because fair minded jurist could disagree that the state court's decision conflicts with Supreme Court precedent since the court applied the correct standard and, based on the evidence presented regarding Petitioner's mental state, concluded an involuntary manslaughter instruction was not available under Illinois law based. *See Greene v. Fisher,* 565 U.S. 34, 38 (2011).

**Certificate of Appealability**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S.

11

322, 335 (2003). Rather, a habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has not established that reasonable jurists would debate that the Court erred in concluding that the Illinois Appellate Court did not unreasonably apply clearly established Supreme Court law to his ineffective assistance of counsel claim. As such, the Court declines to certify his issue for appeal under 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies Petitioner's petition for a writ of habeas corpus and declines to certify any issues for appeal.

IT IS SO ORDERED.

Date: 10/22/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge